IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DIANA I AM, | ) | CIV. NO. 09-00060 SOM/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| NATIONAL CITY MORTGAGE | ) | |
| COMPANY, a division of | ) | |
| National city Bank; NATIONAL | ) | |
| CITY BANK; FIDELITY NATIONAL | ) | |
| TITLE AND ESCROW OF HAWAII; | ) | |
| PAUL GREEN; ALOHA COMMUNITY | ) | |
| LENDING; JOSIE HARMON; NAKA | ) | |
| GACETTA; GACETTA APPRAISALS, | ) | |
| LLC; PETER LASICH; PACIFIC | ) | |
| RIM APPRAISAL SERVICES; AND | ) | |
| JOHN DOES 1-50 | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        Plaintiff Diana I Am refinanced a mortgage loan in 2006
that she has allegedly defaulted on.  She is presently in
foreclosure proceedings in state court.  Asserting violations of
the Truth in Lending Act and other statutes, she comes to this
court seeking rescission of the loan.  Defendants Peter Lasich
and Pacific Rim Appraisals, who reviewed an appraisal of
Plaintiff's property, deny any liability.  Defendant PNC Mortgage
Company ("PNC"), the lender, argues that the law does not provide
for rescission by Plaintiff.  This court agrees with Pacific Rim
and PNC and grants their motions for summary judgment.

II.        FACTUAL BACKGROUND.

In January 2006, Plaintiff sought to buy property that was offered for $258,000, but had an appraised value of $300,000. Pl. Affid. ¶¶ 7, 15; Ex. U, attached to Pl.'s Exhibits.  In April 2006, Plaintiff purchased the property for $262,500, see Plaintiff Affid. ¶ 21, after obtaining a loan for $249,375 from PNC Bank ("PNC"), successor by merger with National City Mortgage, a division of National City Bank.  Exs. A & B, attached to Thomas Decl.  This was an adjustable rate loan, with an initial yearly interest rate of 7.5%.  Id.

About six months later, Plaintiff contacted PNC to discuss possible refinancing options.  On October 13, 2006, PNC hired Gaceta Appraisals, LLC, to appraise Plaintiff's property. Ex. W, attached to Pl.'s Exhibits.  Gaceta appraised the property at $540,000.  Id.  PNC then hired Network Appraisal Services, which in turn hired Pacific Rim Appraisal Services, to review the Gaceta appraisal.  Ex. X, attached to Pl.'s Exhibits.  Pacific Rim Appraisal determined that the property was worth $370,500. Id.

On December 19, 2006, Plaintiff refinanced her loan with PNC at a lower interest rate, taking out about $30,000 in cash.  Ex. C, attached to Thomas Decl.; Thomas Decl. ¶ 7 (stating that Plaintiff received cash); Ex. E, attached to Thomas Decl. (settlement statement noting that Plaintiff received cash).

Plaintiff used part of the cash to pay off a previous home equity loan from Bank of Hawaii.  Ex. II, attached to Pl.'s Exhibits (Bank of Hawaii Home Equity Line Agreement and Disclosure statement giving her a credit limit of $47,000); Pl. Affid. ¶ 27 ("To pay off my loans to Bank of Hawaii and National City mortgage, I refinanced with National City Mortgage.").

PNC says Plaintiff received two copies of a "Notice of Right To Cancel" at the closing of the refinanced loan.  This document advised Plaintiff:

> You are entering into a new transaction to increase the amount of credit previously applied to you.  Your home is the security for this new transaction.  You have a legal right under federal law to cancel this new transaction, without cost, within THREE BUSINESS days.

Ex. F, attached to Thomas Decl.  Plaintiff appears to have acknowledged receipt of this document by signing the copies on December 19, 2006, under the following statement: "The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL."  Ex. F, attached to Thomas Decl.

Lightning struck Plaintiff's house in February 2007.  Around that time, Plaintiff also became ill and unable to work.  Ex. SS, attached to Pl.'s Exhibits; Pl. Affid. ¶ 30.  About a month later, Plaintiff obtained a new home equity loan from the Bank of Hawaii, this time for a $148,000 line of credit.  Pl. Affid. ¶ 27; Ex. A, attached to Rosen Decl.  Plaintiff,

apparently relying on the Gaceta appraisal, says that she "would never have gotten the equity credit line of $148,000.00 from the Bank of Hawaii if I had known the true value [of my property]." Ex. H, attached to Pl.'s Exhibits; Pl. Affid. ¶ 38 ("I completely relied upon the second appraisal by Naka Gacetta for my home equity loan with Bank of Hawaii.").

Finding that she could not make all the payments on her real property, Plaintiff tried to sell her property through a "short sale." Id. ¶¶ 32-34. "A short sale is, in its simplest definition, a sale by a willing seller to a willing buyer for less than the total encumbrances on the home with the consent of the underlying lienholders who agree to take less than what they are owed." In re Fabbro, 411 B.R. 407, 413 n.7 (Bankr. D. Utah 2009). In other words, a short sale occurs when a homeowner owes more money on a mortgage than the house is worth, but the lender agrees to a discounted payoff. Around this time, another appraiser who valued her property at $260,000 allegedly told Plaintiff that her property had been overvalued when she purchased it, and that "people were winning suits against appraisers who made overvalued appraisals and the appraisers were having to pay back the loans themselves." Id. ¶ 35.

On June 30, 2008, Bank of Hawaii filed suit in Hawaii state court seeking to foreclose Plaintiff's mortgage in light of her loan default. Ex. A, attached to Rosen Decl.

On January 2, 2009, Plaintiff told PNC that the appraisal fee charged in 2006 had been exorbitant and that the 2006 appraisal had been "a ploy to get my loan to value rate down so that you could tack on PMI insurance with your chosen carrier." Ex. A, attached to Compl. Plaintiff sought "a full refund for all monies" she had paid. Id.

On February 12, 2009, Plaintiff filed the present suit in this court against numerous entities associated with her 2006 loan. She asserts seven claims against eleven Defendants. In Count I, Plaintiff asserts that Defendants violated the Truth in Lending Act and seeks rescission of her December 2006 loan from PNC. Compl. ¶¶ 43-49. In Count II, Plaintiff claims that Defendants violated the Home Ownership Equity Protection Act by extending Plaintiff a loan without considering her ability to pay the loan. In Count III, Plaintiff says that all Defendants violated the Real Estate Settlement Procedures Act by accepting "charges for the rendering of real estate services which were in fact charges for other than services actually performed." Compl. ¶ 63. In Count IV, Plaintiff seeks statutory damages for violations of the Truth in Lending Act. In Count V, Plaintiff says that Defendants violated the Fair Credit Reporting Act by providing incorrect information about her to credit reporting agencies. In Count VI, Plaintiff says that Defendants fraudulently misrepresented the terms of her loan and mortgage.

In Count VII, Plaintiff asserts that she had an implied contract with Defendants and says that Defendants have been unjustly enriched.  Plaintiff seeks rescission of the mortgage loan transaction, and return of money or property.  Compl. ¶¶ 49, 60, 64, 76, 86.

In conjunction with filing her Complaint, Plaintiff filed an Application To Proceed Without Prepayment of Fees and a motion for a temporary restraining order.  On February 13, 2009, this court allowed Plaintiff to proceed without prepayment of fees but denied her motion for a temporary restraining order. Diana I Am v. Nat'l City Mortg. Co., No. 09-00060, 2009 WL 364332, at *2 (D. Haw. Feb. 13, 2009).

Peter Lasich and Pacific Rim Appraisal (collectively, "Pacific Rim") now seek summary judgment on the ground that they did not act unlawfully.  PNC also moves for summary judgment on all claims.

III.    LEGAL STANDARD.

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller v. Glenn Miller Prods., Inc., 454

F.3d 975, 988 (9th Cir. 2006).  (internal quotations and brackets omitted).

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (effective Dec. 1, 2009).  To withstand a properly made and supported motion for summary judgment, the opposing party must set forth evidence showing that there is a genuine issue of material fact in dispute.  Fed. R. Civ. P. 56(e)(2).  However, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Catrett, 477 U.S. at 322.  When the opposing party fails to make such a showing, there is no genuine issue of material fact, as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.  In such cases, summary judgment should be granted.

IV.     ANALYSIS.

Plaintiff claims that Pacific Rim violated numerous laws by appraising her property at a value of $370,500 and charging an exorbitant amount for that appraisal.  Because there

is no evidence that Pacific Rim acted unlawfully, Pacific Rim is entitled to summary judgment on all claims against it.  PNC also moves for summary judgment, arguing that many claims are time-barred, and that Plaintiff has not established the remaining claims.  The court agrees and also grants PNC's motion.

A.   Summary Judgment is Granted in Favor of Pacific Rim and PNC.

Plaintiff asserts in Count I and Count IV that all Defendants violated the Truth in Lending Act ("TILA") by failing to disclose certain information and by refusing to rescind the 2006 loan.  In Count II, Plaintiff claims that all Defendants violated the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639(h), by extending credit without considering her ability to repay.  Compl. ¶ 55.  Plaintiff says that each "defendant is a 'creditor' as defined by HOEPA."  Id. ¶ 52.

1.   Pacific Rim Is Entitled to Summary Judgment on Counts I, II, and IV Because TILA and HOEPA Do Not Apply to Pacific Rim.

TILA and HOEPA require creditors to disclose certain information to consumers in credit transactions.  15 U.S.C. §§ 1602(f), 1639.  HOEPA is an amendment to TILA and is designed to prevent some predatory lending practices targeting vulnerable consumers.  15 U.S.C. § 1639.  Certain home equity loans are subject to additional consumer protections under HOEPA.  The term "creditor" under both TILA and HOEPA generally refers to a person who regularly extends consumer credit and to whom the debt

8

arising from the consumer credit transaction is initially
payable.  <u>See</u> 15 U.S.C. § 1602(f); <u>see also</u> 12 C.F.R.
§ 226.2(a)(17).  As Pacific Rim did not lend money or extend
credit to Plaintiff, Pacific Rim is not a creditor.  <u>See</u> <u>Viernes</u>
<u>v. Executive Mortg., Inc.</u>, 372 F. Supp. 2d 576, 581-82 (D. Haw.
2004) (holding that a mortgage broker and one of its officers
were not creditors under TILA); <u>accord Morilus v. Countrywide</u>
<u>Home Loans, Inc.</u>, No. 07-0900, 2007 WL 2461803, at *1 (E.D. Pa.
Aug. 23, 2007) (noting that the court properly dismissed TILA and
HOEPA claims against an appraiser because those acts only apply
to creditors).  The TILA and HOEPA claims in Counts I, II, and IV
against Pacific Rim fail.

        Plaintiff appears to complain that the $1200 appraisal
fee that Network Appraisal Services charged Plaintiff is
unreasonable and exorbitant.  For its part, Pacific Rim charged
Network Appraisal Services only about $500.  Ex. J, attached to
Pl.'s Exhibits; Ex. 5, attached to Lasich Concise Statement.  If
a complaint about a $1200 fee can proceed at all, it must be
against Network Appraisal Services.  Only three paragraphs in
Plaintiff's Complaint even mention Pacific Rim.  Plaintiff says
that she "incurred substantial expenses in both loans, including
. . . various appraisals, some of which were grossly inflated and
fraudulent."  Compl. ¶ 19.  She further claims that many
appraisals valued her property at different amounts.  <u>Id.</u> ¶ 22.

Plaintiff also says that she relied on Pacific Rim to use its "professional expertise to properly value the subject property." Id. ¶ 23.  None of these allegations, without more, supports a TILA or HOEPA claim against Pacific Rim.

2.  <u>Counts I, II and IV Against PNC Fail.</u>

Plaintiff says that PNC violated TILA and HOEPA by failing to inform her of her right to rescind and by incorrectly disclosing certain finance charges.  She contends that she is entitled to rescind her mortgage transaction, and to statutory damages.  PNC responds that Plaintiff has not proven that she is entitled to rescission and that the statute of limitations bars her TILA and HOEPA statutory damages claims.  This court agrees.

The purpose of TILA is to protect a consumer against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. § 1601(a).  Because it is designed to protect consumers in credit transactions, it is liberally construed in favor of the consumer and strictly enforced against the creditor.  <u>In re Ferrell</u>, 528 F.3d 1186, 1189 (9th Cir. 2008); <u>Jackson v. Grant</u>, 890 F.2d 118, 120 (9th Cir. 1989).  TILA gives a borrower three days to rescind a loan  without penalty when the borrower's principal dwelling is security for the loan.  <u>Semar v. Platte Valley Fed. Sav. & Loan Ass'n</u>, 791 F.2d 699, 701 (9th Cir. 1986); 15 U.S.C. § 1635(a).

PNC argues that Plaintiff's rescission claim is barred because she attempts to rescind more than two years after the loan was finalized, well past the three-day rescission period.

Plaintiff appears to have signed an acknowledgment that she received duplicate copies of the Notice of Right To Cancel when she refinanced her loan in December 2006.  Ex. F, attached to Thomas Decl.  A written and signed acknowledgment of receipt by the borrower creates a rebuttable presumption that the borrower did receive the Notice of Right To Cancel. 15 U.S.C. § 1635(c); see Sibby v. Ownit Mortg. Solutions, Inc., 240 Fed. Appx. 13 (6th Cir. Jul. 6, 2007) (noting that the plaintiff's deposition testimony that she only received one copy was insufficient to rebut this presumption); Valdez v. Am.'s Wholesale Lender, No. 09-02778, 2009 WL 5114305, at *4 (N.D. Cal. Dec. 18, 2009) ("such written acknowledgment does no more than create a rebuttable presumption of delivery."); Garza v. Am. Home Mortg., No. 08-1477, 2009 WL 1139594, at *3 (E.D. Cal. April 28, 2009) ("A disclosure statement's signed acknowledgment that plaintiff borrowers . . . received a fully completed copy of the disclosure statement in the absence of dispute as to the document's authenticity constitutes prima facie proof of delivery.").  Thus, PNC creates a rebuttable presumption that Plaintiff received the Notice of Right To Cancel by attaching the signed documents.

Plaintiff presents no evidence that overcomes the presumption that she received the Notice of Right To Cancel. To the contrary, under penalty of perjury, she states that the Notice of Right To Cancel was "presented among numerous papers at the closing for my initials." Answer (verified) at 2. Although at the hearing on the present motions, she questioned whether she had indeed received the Notice of Right To Cancel at closing, her very uncertainty dooms any attempt to overcome the presumption of receipt, especially given her prior sworn assertion. Plaintiff's request for rescission is therefore time-barred, unless she establishes that PNC failed to make some material disclosure. A lender must disclose the right to rescind and must make other "material" disclosures to a borrower. 12 C.F.R. § 226.23(a)(3); see 15 U.S.C. § 1602(u)(defining material disclosures). If a lender fails to disclose the right to rescind or make any other material disclosure, a borrower's right to rescind extends for three years. Jackson, 890 F.2d at 120; 12 C.F.R. § 226.23(a)(3). A single violation regarding these disclosures, even if technical, extends the rescission period. See Semar, 791 F.2d at 703-05 (finding a violation when a lender failed to write the date the rescission period expired on the borrower's notice of right to rescind).

Plaintiff shows neither that PNC failed to disclose the right to rescind nor that PNC failed to make any other material

disclosure.  Plaintiff therefore remains bound by the three-day rescission period, which she did not meet.

Trying to identify some material omission, Plaintiff first claims that the Notice of Right To Cancel did not identify the transaction, disclose the security interest in her home, inform her of her right to rescind the transaction, or explain how to exercise that right, see Compl. ¶¶ 41, 36, but the Notice did indeed contain all of that information.  The Notice of Right To Cancel in fact contained the exact language of the rescission model form in Appendix H of Regulation Z, the TILA regulations. See 12 C.F.R. § 226.15 App. H.  If a creditor uses the correct model form and complies with all other requirements regarding notice, the consumer has no right to rescind based on an incorrect form of the notice.  15 U.S.C. § 1635(h).

The Notice of Right To Cancel clearly identified the transaction as "a transaction to increase the amount of credit previously applied to you."  Ex. F, attached to Thomas Decl.  It disclosed the security interest in Plaintiff's home, saying that "your home is security for the new transaction."  It described her right to rescind and explained how to exercise that right, explaining that "You have a legal right to cancel this new transaction within three business days. . . . You may do so by notifying us in writing, . . . [or] You may use this notice by dating and signing below."  Ex. F, attached to Thomas Decl.

13

Finally, it explains that if the borrower cancels, the lender must "return any money you have given to us or anyone else in connection with this new transaction." Id. The document explained that the notice of cancellation had to be sent by December 22, 2006. The Notice of Right To Cancel did not omit required information.

Plaintiff also argues that the Notice of Right To Cancel was faulty because it "failed to reveal all of the facts of my ability to rescind for three years if there were TILA violations." Answer at 2. But the law does not require a lender to disclose the three-year right of rescission that applies if there are TILA violations. TILA only requires notice of the right of rescission. See 12 C.F.R. § 225.15 (requiring that the notice clearly and conspicuously disclose the retention of a security interest in the dwelling, the consumer's right to rescind, how to exercise that right, the effects of rescission, and the date the three-day rescission period expires).

Plaintiff also claims that PNC failed to properly disclose other material information that TILA requires lenders to disclose. Compl. ¶ 42. Plaintiff says that PNC improperly "included certain charges, in the amount financed, which are finance charges," and "improperly disclosed the amount financed." Id. It is unclear what specific charge Plaintiff believes PNC inaccurately or improperly disclosed. Plaintiff appears to be

14

complaining that the annual precentage rate differs from the fixed interest rate.  Thus, she says that "by calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed . . . the Defendant understated the disclosed annual percentage rate."  Compl. ¶ 42(c).  However, Plaintiff does not show that PNC improperly calculated the APR.  Plaintiff had a fixed interest rate of 6.5%. The APR was 7.145%.  Ex. P, attached to Pl.'s Exhibits.  In general, the APR is the monthly interest rate multiplied by the number of payment periods in a year, taking into account other fees, such as participation fees, loan origination fees, and monthly service charges.  The APR is likely to differ from the "note rate" or "headline rate" advertised by the lender, as the APR includes fees not included in the fixed interest rate.  See 15 U.S.C. § 1606(a) (defining "annual percentage rate").  The mere difference between the APR and the fixed rate is not evidence of a TILA violation.

Even if Plaintiff established an improper material disclosure, the court could condition rescission on a showing by Plaintiff that she could tender the amount owed or property equivalent to the debt.  TILA requires a creditor to return any money or property to the borrower and terminate the security interest within twenty days of receiving a notice of rescission from a borrower.  See 15 U.S.C. § 1635(b).  Once that happens,

15

the borrower must tender the loan or the property.  <u>Id.</u>  However,
a court has discretion to delay a lender's return of money to a
borrower on the borrower's tender of the amount owed or of the
property to the lender.  Whether a decree of rescission should be
conditional depends on "the equities present in a particular
case, as well as consideration of the legislative policy of full
disclosure that underlies the Truth in Lending Act and the
remedial-penal nature of the private enforcement provisions of
the Act."  <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167, 1171 (9th
Cir. 2003) (citations omitted).  If the borrower cannot comply
with any rescission obligation, the court may deny rescission.
<u>Id.</u> at 1173.

　　　　PNC first notes that Plaintiff has failed to plead her
ability to repay the loan.  But it is not at all clear that
Plaintiff must plead that she is able to pay back the loan.  <u>See</u>
<u>Valdez v. Am. Wholesale Lender</u>, No. 09-2778, 2009 WL 5114305, at
*4 (N.D. Cal. Dec. 18, 2009) (noting that district courts are
split as to whether the borrower must allege a present ability to
pay the loan proceeds).

　　　　Even if Plaintiff need not plead an ability to tender
on the amount owed, she has not provided any evidence that she
can actually tender the borrowed funds or equivalent property to
PNC.  PNC points to Plaintiff's status as a pauper as indicating
her inability to make such a tender.

At the hearing on this motion, this court asked
Plaintiff whether she was willing to tender amounts received from
PNC and not yet repaid.  Plaintiff responded that she had offered
to tender her property.  See also Answer at 2 (saying that
Plaintiff "offered to tender the subject property as repayment in
kind").  What is not clear is whether the property is worth what
she borrowed but has not yet repaid.  Evidence submitted to the
court shows that Plaintiff has made 20 payments on her loan to
PNC.  Affid. ¶ 29.  With a monthly payment of about two thousand
dollars, Plaintiff clearly owes most of the $330,000 loan amount.
If the property is now worth $260,000, the most recent appraised
value, the property may not even cover the loan principal still
owed, much less yield any refund to Plaintiff.

Plaintiff herself says that the Bank of Hawaii had
previously attempted a short sale of the property.  Affid. ¶¶ 33-
38.  In a "short sale," the proceeds of the sale fall short of
what the owner owes on her mortgages.  Plaintiff appears not to
understand that rescission must put the parties where they were
before the transaction occurred.  See Baldain v. Am. Home Mortg.
Serv., Inc., at *9 (E.D. Cal. Jan. 5, 2010) ("The effect of
rescission is to undo the transaction.").  That is, even if
rescission is an available remedy, PNC is entitled to receive the
amount it loaned Plaintiff that has not yet been repaid.
Plaintiff's inability to tender that amount presents yet another

17

ground justifying summary judgment for PNC on the rescission claim asserted in Count I.

In Counts II and IV, Plaintiff seeks damages under TILA and HOEPA.  Damage claims under TILA and HOEPA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  As a general rule, the statute of limitations "starts at the consummation of the transaction."  King v. California, 784 F.2d 910, 915 (9th Cir. 1986).  However, courts may extend the period if the one-year rule would be unjust or would frustrate TILA's purpose.  Id.  For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations.  Id.; see also Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902-03 (9th Cir. 2003)(refusing to toll the statute of limitations on a TILA claim because the plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or any other action that would have prevented discovery of TILA violations).

Plaintiff refinanced her loan in December 2006.  She filed suit in February 2009.  The one-year statute of limitations bars her claims, absent a reason for this court to toll the statute of limitations.  Plaintiff does not offer any reason justifying such tolling.  Plaintiff filed suit after foreclosure

18

proceedings had begun on her property, and she admitted that she had received the loan documents and had signed them.  Nothing suggests that any information was concealed or that Plaintiff was somehow prevented from discovering any potential TILA or HOEPA claim.  See Blanco v. Am. Home Mortg. Serv., Inc., No. 09-578, 2009 WL 4674904, at *3 (E.D. Cal. Dec. 4, 2009) (finding equitable tolling inapplicable, as the plaintiff failed to offer facts demonstrating how the facts surrounding the plaintiff's mortgage were concealed, and did not explain "what prevented her from later reviewing the loan documents, which she admittedly was given at closing").  Plaintiff's TILA and HOEPA claims for damages against PNC are therefore time-barred.

> B.   Count III, Alleging Violations of the Real Estate Settlement Procedures Act, is Barred by the Statute Of Limitations.

Plaintiff says that Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), specifically 12 U.S.C. § 2607.  Compl. ¶ 63.  Plaintiff says that Defendants violated RESPA by accepting "charges for the rendering of real estate services which were in fact charges for other than services actually performed."  Id.

Any action pursuant to the provisions of § 2607 must be brought within one year from the date the violation occurred.  12 U.S.C. § 2614.  The date the violation occurred is, at the latest, the "date of the closing, which is a definite and

indisputable date known to potential plaintiffs and defendants."
<u>Hollister v. Wells Fargo Home Loan Mortg.</u>, No. 09-2558, 2010 WL
144440, at *3 (S.D. Cal. Jan. 11, 2010).  Closing occurred in
December 2006.  Plaintiff filed suit in February 2009, clearly
more than one year after the alleged violation of RESPA.

The Ninth Circuit has not addressed whether equitable
tolling applies to RESPA claims.  <u>See</u> <u>Bezverkhov v. Cal-Western
Reconveyance Corp.</u>, No. 09-01880, 2009 WL 4895581, at *3 (E.D.
Cal. Dec. 11, 2009) (noting that district courts have applied
equitable tolling when plaintiffs have investigated their RESPA
claims).  Even assuming RESPA allows equitable tolling, Plaintiff
has not established that she is entitled to equitable tolling.
Plaintiff asserts that she did not discover the RESPA violations
until December 2008, around the time she was being threatened
with foreclosure.  However, Plaintiff previously stated under
penalty of perjury that she received copies of the loan documents
at closing.  As noted earlier in this order, Plaintiff, at the
hearing on the present motions, expressed uncertainty as to what
she did or did not receive at closing.  This uncertainty does not
meet her burden of establishing entitlement to equitable tolling.
In sum, Plaintiff fails to demonstrate any reason for the court
to toll the statute of limitations.

     C.   Count V, Alleging Violations of the Fair Credit
          Reporting Act, Fails With Respect to Pacific Rim and
          PNC.

     In Count V, Plaintiff alleges that Defendants, as

providers of information to credit reporting agencies, violated

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1781, by

giving those agencies inaccurate information about Plaintiff's

credit.  Compl. ¶¶ 71, 72.

     Plaintiff appears to be arguing that Pacific Rim is

liable under FCRA because it reported information to credit

agencies.  But Pacific Rim provides evidence that it did not

provide any information about Plaintiff to any credit agency.

Laisch Decl. ¶ 14.  Plaintiff presents no evidence raising a

factual issue on this matter.

      Plaintiff also appears to be asserting that PNC gave

inaccurate information about her to credit agencies.  She does

not identify the specific inaccurate information.  Compl.

¶¶ 71-76.  She only says that because of her bad credit score,

she could not refinance her 2003 Chevy Avalanche truck, and it

was repossessed.  Answer at 4.  Nor does she show that she

notified any credit reporting agency of the allegedly inaccurate

information.  Plaintiff's claim fails, as notifying credit

reporting agencies of any inaccurate information is one of the

prerequisites to suit.

FCRA places obligations on those who furnish information to consumer reporting agencies.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2008).  Under 15 U.S.C. § 1681s-2(a), furnishers of credit information have certain duties, such as providing accurate information to a credit reporting agency.  However, these duties imposed on furnishers under subsection (a) are enforceable only by federal and state agencies.  See Gorman, 584 F.3d at 1154; see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. § 1681s-2(d) (noting that duties created under section 2(a) are enforced exclusively by the Federal agencies and officials and State officials).

FCRA does create a private right of action for willful or negligent noncompliance with its requirements.  This private right is limited to claims arising under subsection (b), which sets forth a credit furnisher's duties when given notice of a dispute by a credit reporting agency.  Gorman, 584 F.3d at 1154.  Nelson explains:

> Congress did not want furnishers of credit
> information exposed to suit by any and every
> consumer dissatisfied with the credit
> information furnished.  Hence, Congress
> limited the enforcement of the duties imposed
> by § 1681s-2(a) to governmental bodies.  But
> Congress did provide a filtering
> mechanism in § 1681s-2(b) by making the
> disputatious consumer notify a CRA and
> setting up the CRA to receive notice of the
> investigation by the furnisher.  See 15
> U.S.C. § 1681i(a)(3) (allowing CRA to

> terminate reinvestigation of disputed item if
> CRA "reasonably determines that the dispute
> by the consumer is frivolous or irrelevant").
> With this filter in place and opportunity for
> the furnisher to save itself from liability
> by taking the steps required by § 1681s-2(b),
> Congress put no limit on private enforcement
> under §§ 1681n & o.

Nelson, 282 F.3d at 1060.

When notified by a credit reporting agency that it may have provided inaccurate information about a creditor, a furnisher of information must conduct an investigation with respect to the disputed information.  See Nelson, 282 F.3d at 1059-60.

It is only after (1) a consumer has notified a credit reporting agency of an inaccuracy, (2) the agency has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher.  15 U.S.C. §§ 1681n & o; see also 15 U.S.C. § 1681s-2(b) (describing the duties of a furnisher of information when given notice of a dispute).  In other words, the furnisher's duty to investigate does not arise unless it receives notice of the credit reporting dispute directly from the credit reporting agency.  Nelson, 282 F.3d at 1059-60.  Bypassing the credit reporting agency and contacting the information furnisher directly does not actuate the furnisher's obligation to investigate under FCRA and does not give the consumer a private right of action against the furnisher.  Id. at 1060; Woods v. Protection One Alarm Monitoring, 628 F. Supp. 2d 1173, 1184-85 (E.D. Cal. 2007).

23

Plaintiff had to demonstrate that she contacted a credit reporting agency and that the credit reporting agency in turn contacted PNC, thereby triggering PNC's duty to investigate. As Plaintiff has not made this showing, she cannot bring suit against PNC as a furnisher of information.

D.   Count VI, Alleging Fraudulent Misrepresentation, Fails With Respect to Pacific Rim and PNC.

In Count VI, Plaintiff says that Defendants were "fiduciaries" because they provided services relating to her mortgage and loan, and that they breached their fiduciary duties by fraudulently inducing her to enter into a mortgage transaction contrary to her best interest.  Compl. ¶ 79.

A party claiming fraud must establish the following elements:

> (1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.

Shoppe v. Gucci Am., Inc., 94 Haw. 268, 386 14 P.3d 1049, 1067 (2000).  Additionally, a party must state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).

Plaintiff fails to present any evidence suggesting that either Pacific Rim or PNC engaged in any fraudulent conduct. There is nothing suggesting that PNC, as a lender, or Pacific Rim, as an appraiser, knowingly made false representations to

24

Plaintiff.  Additionally, there is no evidence supporting Plaintiff's claims that either Pacific Rim or PNC had a fiduciary relationship with her.  Summary judgment is granted to Pacific Rim and PNC on Count VI.

       E.    Count VII, Alleging Unjust Enrichment, Fails With
            Respect To Pacific Rim and PNC.

In Count VII, Plaintiff alleges that Defendants were obligated under an "implied contract" to ensure that she understood all the necessary fees associated with obtaining her loan.  Compl. ¶ 83.  Plaintiff says that Defendants "had full knowledge that a 'bait and switch' adjustable rate predatory mortgage with an increase in the interest rate" was not in her best interest.  Id. ¶ 84.  Plaintiff has not established any implied contract claim or any unjust enrichment.

To bring an unjust enrichment claim, a plaintiff must prove two elements: "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs." Porter v. Hu, 116 Haw. 42, 54, 169 P.3d 994, 1005 (Haw. Ct. App. 2007) (citing Small v. Badenhop, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985)).

Plaintiff does not provide any evidence that Pacific Rim or PNC received any benefit without legal basis.  This claim fails.

V.       CONCLUSION.

This court grants Pacific Rim's and PNC's motions for summary judgment.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 17, 2010.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Plaintiff I Am v. Nat'l City Mortgage, Civil No. 09-00060 SOM/KSC; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT.